UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 14-449(DSD/BRT)

Marcellino Pena,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　**ORDER**

Bob Kindler, Glen Strom,
and Freeborn County,

        Defendants.

    Richard A. Williams, Esq. and R.A. Williams Law Firm, P.A., 2400 West County Road D, Suite 110, St. Paul, MN 55112, counsel for plaintiff.

    Jessica E. Schwie, Esq. and Tessa M. McEllistrem, Jardine Logan & O'Brien, PLLP, 8519 Eagle Point Blvd., Suite 100, Lake Elmo, MN 55042, counsel for defendants.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Marcellino Pena and defendants Bob Kindler, Glen Strom, and Freeborn County. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies plaintiff's motion and grants defendants' motion.

**BACKGROUND**

This employment dispute arises out of Freeborn County's decision on September 18, 2012, to terminate Pena's employment. Pena was employed by the County from 2004 to September 18, 2012. See McEllistrem Aff. Ex. I, at 2.  Kindler was the County's

sheriff, and Strom was his chief deputy. Pena Dep. at 54:2-7; Kindler Dep. at 4:17-22; Strom Dep. at 4:9-15.

Before his termination, Pena was a co-jail administrator for the County's detention facility. Pena Dep. at 49:6-57:20; McEllistrem Aff. Ex. A, at 387. Pena's job was "to improve the facility, bring in revenue, cut costs," and manage the facility. Pena Dep. at 49:25-50:4, 55:18-23. Pena held a peace officer license from the Board of Peace Officer Standards and Training, although his position did not require that license. Pena Dep. at 147:8-13; Kindler Dep. at 49:7-10.

Pena's employment did not have a defined duration. The Freeborn County personnel rules and regulations states, "These rules are not intended to extend employment rights or provide for a property right in employment. Specifically, these rules are not intended to alter employment at will provisions of Minnesota Statutes." McEllistrem Aff. Ex. A, at 37. However, the rules also state, "All disciplinary action shall be for just cause." Id. at 66.

On June 25, 2012, Steve Westland, the other co-jail administrator for the detention facility, received a complaint about Pena from Robert Shearer, the manager of the food supplier for the detention facility. McEllistrem Aff. Ex. P. According to Shearer, one of his employees reported that, on June 19, 2012, Pena grabbed a latex glove and told another employee that, because she

called in sick the day before, Pena "was gonna [sic] have to examine" her. Id. Ex. A, at 192. Westland relayed the allegations to Kindler. Id. Ex. P.

Kindler appointed Strom to investigate whether Pena had previously engaged in similar conduct. Id.; Kindler Dep. at 18:21-23. Over the next few weeks, Strom interviewed five different witnesses, each of whom disclosed similar improper conduct by Pena. McEllistrem Aff. Ex. A, at 198-200, 213-14, 222-223, 226, 240-41, 245-46, 258, 262-63. The witnesses also reported that Pean watched movies while on duty and instructed employees to draft his resume and submit job applications for him. Id. at 239-40, 243.

On July 21, 2012, Kindler placed Pena on paid administrative leave, pending the results of the ongoing investigation. Id. at 5. On July 23, 2012, Pena met with Kindler, Strom, the County's human resources director Bonnie Grieger, and the County's administrator John Kluever to discuss the preliminary findings. Id. at 6; Kindler Dep. at 52:13-18. Pena was told he was being investigated for "harassment and sexual harassment," and was given a general description of the complaints against him. McEllistrem Aff. Ex. A, at 7.

From July 23 to August 15, 2012, Strom interviewed nine additional witnesses. Id. at 266-367. Those witnesses corroborated the narratives of the previous witnesses. Id. at 270-72, 276, 284-85, 314-15, 322-23, 366. The witnesses also recounted additional

instances of misconduct, including numerous allegations of sexual harassment. Id. at 281, 315-16, 325, 347-48, 363-66.

On August 17, 2012, Strom provided Pena with a letter setting forth ten allegations against him. Id. at 11-14. For each allegation, the letter provided a detailed description of the misconduct. Id. Finally, the letter informed Pena that he would have the opportunity to provide a statement and respond to the allegations on August 23, 2012, and that he could arrange to have legal representation present. Id. at 14.

Pena met with Strom and Grieger on August 23, 2012, without legal representation. Id. at 131. At that meeting, Pena admitted most of the allegations against him. Id. at 138-40, 145-50, 158-61, 164-67, 168-69, 178-79. Strom then completed his investigation and provided a report to Kindler. Strom Dep. at 161:2-17.

On September 4, 2012, Kindler informed Pena that there was "sufficient evidence to proceed toward employment termination." McEllistrem Aff. Ex. A, at 375. The letter explained that the Freeborn County Board of Commissioners would vote on his termination on September 18, 2012. Id. Kindler sent a follow-up letter to Pena on September 11, 2012, confirming that the Board would consider Pena's termination on September 18, and setting forth the specific bases for the termination. Id. at 376-77. The letter also informed Pena that, if he submitted a formal written request, he could appear at the meeting to defend himself. Id. at

377. Finally, the letter explained that although the Board would consider Pena's termination in a closed session, he could request an open session, and that in any event the decision would be announced publicly. Id. On September 14, 2012, Pena submitted a letter of his intent to be present at the meeting. Id. at 378.

On September 18, 2012, the Board considered Pena's termination in a closed session. Id. at 379, 386-87. The Board then returned to an open session and voted in favor of termination, effective immediately. Id. at 387.

On October 18, 2012, Pena wrote a letter to Kindler asserting, for the first time, that he was entitled to the protections of the Peace Officer Discipline Procedures Act (PODPA), Minn. Stat. § 626.89. McEllistrem Aff. Ex. L, at 36-39. The County disagreed, stating that Pena, in his capacity as co-jail administrator, was not "charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest." Id. at 40-41 (quoting Minn. Stat. § 626.84, subd. 1(c)(1)).

Pena appealed his termination to the Minnesota Court of Appeals, arguing that the County violated his procedural due process rights. McEllistrem Aff. Ex. J. Pena asserted that he had a statutorily created property interest under PODPA. Id. Exs. J, K, L, and N. Pena presented evidence in support of his contention. Id. Ex. L, at 33-47. The court rejected the evidence, stating that

5

the court was restricted to the record before the County at the time it terminated Pena's employment. <u>Pena v. Freeborn Cnty.</u>, No. A12-2007, 2013 WL 3868086, at *2, *4 (Minn. Ct. App. July 29, 2013) (citing <u>Dietz v. Dodge Cnty.</u>, 487 N.W.2d 237, 239 (Minn. 1992)). The court ruled that the record did not "support a conclusion that Pena was a peace officer within the meaning of section 626.89," and that Pena "cannot now rely on section 626.89 to establish a property interest in his continued employment." <u>Id.</u> at *4.

Pena also asserted that he had a contractually created property interest under the County's personnel rules and regulations. <u>Id.</u> Ex. N. The court determined that the rules did not alter Pena's status as an at-will employee, and accordingly affirmed Pena's termination. <u>Id.</u> at 5.

On February 18, 2015, Pena filed instant complaint,[1] alleging that: Kindler and Strom deprived him of his due process and First Amendment rights under 42 U.S.C. § 1983; defendants violated the Fair Labor Standards Act (FLSA) under 29 U.S.C. § 201; and defendants violated PODPA. The parties now bring cross-motions for summary judgment.

---

[1] Pena has abandoned Counts I, II, III, and VI of the complaint. ECF No. 48, at 8.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Res Judicata and Collateral Estoppel**

The County argues that Pena's due process claims are barred by the doctrines of res judicata and collateral estoppel because the claims and issues therein were adjudicated before the court of appeals. Pena responds that the doctrines do not apply because the court of appeals' review was restricted to the record before the County at the time it made its decision.

Res judicata "precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action." Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982). "Under Minnesota law, the disposition of an earlier claim constitutes a res judicata bar against the litigation of a subsequent claim where ... the estopped party had a full and fair opportunity to litigate the matter." Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011) (internal quotation and citation omitted). Collateral estoppel bars relitigating an issue if "the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." Johnson v. Consolidated Freightways, Inc., 420 N.W.2d 608, 613 (Minn. 1988). Neither doctrine should be rigidly applied, as they may "blockade[] unexplored paths." Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004) (internal quotation marks and citation omitted).

Neither doctrine applies to Pena, because he was not given a full and fair opportunity to be heard. The County did not have

8

legal authority to adjudicate whether Pena had a protected property interest under either PODPA or the County's rules.  See In re Welfare of J.B., 782 N.W.2d 535, 549 (Minn. 2010) ("Counties can exercise only those powers expressly granted to them by the Legislature ...."); Minn. Stat. §§ 373.01, 375.18 (enumerating the powers of counties and county boards, and failing to give them the power to adjudicate issues of state law); see also Woodard v. Jefferson Cnty., 18 F. App'x 706, 714 (10th Cir. 2001) (holding that only the state, not a county board, has the authority to "conclusively resolve issues of state law").  The court of appeals limited its review to the record before the County at the time it made its decision.  Given that the County lacked authority to adjudicate whether Pena had a protected property interest, there was no relevant record on that issue for the court of appeals to review.  Applying the doctrine of res judicata or collateral estoppel would prevent Pena from exploring theories that he did not have a full and fair opportunity to litigate below.  Accordingly, neither res judicata nor collateral estoppel bars Pena's due process claims.

**III. Due Process Claims**

Pena claims that defendants violated his right to due process. However, Pena fails to establish the requisite property interest necessary for a due process claim.  A public employee with a constitutionally protected property interest in employment must be

9

afforded due process prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). "A protected property interest in public employment must be created by an independent source, such as a contract or a statute." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).

**A.    Peace Officer Discipline Procedures Act**

Pena first argues that PODPA creates a protected property interest because he was a licensed peace officer when the County terminated his employment. The County responds that Pena's license is insufficient to trigger PODPA's protections because he did not need that license to perform his duties.

PODPA protects "licensed peace officer[s] ... as defined in section 626.84, subdivision 1, paragraphs (c) and (d)." Minn. Stat. § 626.89, subd. 1(c). "In clear and unambiguous language, Minn. Stat. § 626.84, subd. 1(c), states four specific requirements that a person must meet to fall within the definition of 'peace officer.'" In re Jerve, 749 N.W.2d 404, 408 (Minn. Ct. App. 2008). A peace officer is (1) an employee or an elected or appointed official of a political subdivision or law enforcement agency, (2) who is licensed by the Board of Peace Officer Standards and Training, (3) who is charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state, and (4) who has the full power of arrest. Minn. Stat. § 626.84, subd. 1(c)(1).

Neither party disputes the first two elements, but Pena has failed to present any evidence as to the third and fourth elements. Moreover, it is undisputed that Pena's job did not require that he hold a peace officer license. Rather, his duties focused on the facility's budget and daily operations, such as coordinating food, medical, and transportation services. He was not involved in preventing or investigating crimes. See Minn. Stat. § 626.84, subd. 1(c)(1). As a result, PODPA does not apply to Pena, and he had no statutorily created property interest.

**B.   Freeborn County Personnel Rules and Regulations**

Pena next argues that the County's personnel rules and regulations created a contractual property interest. The County responds that the employment policy did not alter Pena's status as an at-will employee.

At-will employees do not have a protected property interest. Rutherford v. Cnty. of Kandiyohi, 449 N.W.2d 457, 460 n.1 (Minn. Ct. App. 1989) (citing Skeets v. Johnson, 816 F.2d 1213, 1215 (8th Cir. 1987)). However, written employment policies can create unilateral contracts, requiring discharge to be for just cause. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1983). Nevertheless, an employer's disclaimer of intent to form a contract in an employment policy will prevent it from being construed as such. Ewald v. Wal-Mart Stores, Inc., 139 F.3d 619, 622 (8th Cir. 1998); Le v. City of Maplewood, No. A06-1684, 2007 WL

11

2302646, at *4 (Minn. Ct. App. Aug. 14, 2007); <u>Olson v. Lakeview Home</u>, No. C1-97-1912, 1998 WL 171002, at *2 (Minn. Ct. App. Apr. 14, 1998).

The County's personnel rules and regulations expressly disclaim any alteration to at-will employment: "These rules are not intended to extend employment rights or provide for a property right in employment. Specifically, these rules are not intended to alter employment at will provisions of Minnesota Statutes." McEllistrem Aff. Ex. A, at 37. Accordingly, Pena had no contractually created property interest and summary judgment is also warranted on this basis.

## IV. First Amendment Claim

Pena claims that defendants violated his First Amendment rights.[2] Specifically, Pena asserts that he was terminated because he spoke to his subordinates about the upcoming sheriff's election in 2010. However, the subordinates reported to Strom that Pena ordered them to leave their job duties and get in his car, at which point one subordinate explained, "[he] basically just told us if we don't vote for [Kindler's opponent] we're pretty much done."

---

[2] Pena originally pleaded a First Amendment claim under 42 U.S.C. § 1983, but then waived that claim. However, after oral argument, he sought to raise a new claim based on a recent Supreme Court decision, <u>Heffernan v. City of Paterson, N.J.</u>, No. 14-1280, 2016 WL 1627953 (U.S. Apr. 26, 2016). <u>Heffernan</u> dealt with the narrow issue of an employee's termination based on the employer's factual mistake about the employee's protected political activity, and is inapposite to this case. Nevertheless, the court addresses Pena's First Amendment claim.

McEllistrem Aff. Ex. A, at 240-41, 272-73. The subordinates described Pena's conduct as "bullying" and "totally uncomfortable." Id. at 240-41. That incident formed part of the basis for one of the ten allegations against Pena. Id. at 12.

A public employee asserting a freedom-of-speech violation must establish that the speech involved "was a substantial factor in the adverse employment decision." Bausworth v. Hazelwood Sch. Dist., 986 F.2d 1197, 1198 (8th Cir. 1993). A lapse in time between speech and retaliation mitigates the causal connection between the two events. See Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012) (finding that the "comments were made six months before" the termination decision and that the "gap in time" negated the causal connection); Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1153 (8th Cir. 2007) (finding that comments made "four months before [plaintiff's] termination" did not establish a causal connection); Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and [plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link").

Pena's termination occurred approximately two years after the speech at issue, belying his claim that the political nature of his speech was the reason for his termination. Rather, as discussed,

13

he was terminated for harassing co-workers, and this incident is further evidence of such harassment. Thus, although Pena had a right to political speech, he did not have the right to harass his subordinates. Defendants are entitled to summary judgment on Pena's First Amendment claim.

**V.    Fair Labor Standards Act**

Pena claims that defendants violated FLSA. Specifically, he asserts that, in approximately January 2011, Kindler instructed him not to incur any overtime hours, but required him to perform tasks that required him to work overtime. Pena Dep. at 163:11-25.

The FLSA prohibits the employment of any person "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." Holaway v. Stratasys, Inc., 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946), superseded by statute on other grounds). If an employer has failed to keep records, as required by 29 U.S.C. § 211(c), "employees are not denied recovery under the FLSA simply because they cannot prove the precise extent of their uncompensated work." Id. Rather, "employees are to be awarded compensation based on the

most accurate basis possible." Id. (citation and internal quotations omitted). "Under this relaxed standard of proof, once the employee has shown work performed for which the employee was not compensated, and sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." Id. (citations and internal quotations omitted).

Pena has provided no evidence, other than his own vague testimony, to establish that he performed unpaid overtime work. Pena acknowledges that there should be documentation establishing the kinds and times of the tasks he performed outside his regular work hours, but has failed to present any. See Pena Dep. at 165:22-167:2. His unsubstantiated testimony is insufficient to "show the amount and extent of [overtime] work which would allow a fact-finder to find overtime hours as a matter of just and reasonable inference." Holaway, 771 F.3d at 1060 (emphasis in original) (citation and internal quotations omitted). As a result, defendants are entitled to summary judgment on Pena's FLSA claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [ECF No. 32] is granted; and

2. Plaintiff's motion for partial summary judgment [ECF No. 34] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 19, 2016

s/David S. Doty
David S. Doty, Judge
United States District Court
